UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HILDA RAMIREZ<br>On behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br>  v.<br><br>HEARTY HEARTS HOME HEALTH, LLC, et al.,<br><br>        Defendants. | CASE NO. 1:22-cv-01542<br><br>JUDGE CHARLES ESQUE FLEMING<br><br>**JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT** |

Plaintiff Hilda Ramirez and Defendants Hearty Hearts Home Health, LLC and Eminelly Garced respectfully and jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) approve the proposed settlement of FLSA claims for the Potential Opt-Ins who join the case pursuant to § 216(b), and (3) approve a proposed notice to Potential Opt-Ins. A proposed Approval Order is attached as Exhibit 4.

The terms of the proposed settlement are set forth in the parties' Settlement Agreement attached as Exhibit 1. The settlement will apply to Plaintiff Ramirez and the Opt-ins who join the case pursuant to 29 U.S.C. § 216(b). The Potential Opt-Ins consist of:

    Current and former home health aides who worked at Hearty Hearts Home Health, LLC in one or more workweeks between August 1, 2019 and March 31, 2023.

*See* Settlement Agreement, at Exhibit 1, ¶¶ 2, 4. These individuals are identified in the Roster of Potential Opt-Ins jointly prepared by the parties and attached as Appendix A to the parties' Settlement Agreement.

The settlement will resolve bona fide disputes involving wages and overtime compensation under the FLSA. Plaintiff alleged that she and other similarly-situated employees were underpaid for hourly wages and/or overtime compensation. Defendants denied those claims.

The parties are represented by experienced counsel. Extensive investigation was conducted on both sides and settlement negotiations were rigorous, including a full-day mediation session with Magistrate Judge Greenberg. The parties believe the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For the Plaintiff and Opt-Ins, the settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to be entitled to them.

The following settlement documents and proposed order are submitted for review and entry by the Court:

Exhibit 1: Agreement of Settlement and Release ("Settlement Agreement")

    Appendix : Roster of Potential Opt-Ins (to be filed as a supplement)

Exhibit 2: Proposed Notice to Potential Opt-Ins

Exhibit 3: Declaration of Plaintiff's Counsel

Exhibit 4: Proposed Final Order

The sections below explain the litigation, the negotiations, the settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I. **THE LITIGATION**

### A. **The Claims and Issues**

Plaintiff Ramirez filed a Class and Collective Action Complaint against Defendants (ECF #1) on August 31, 2022. Plaintiff alleged that she and other similarly-situated employees were not paid for all working hours and were not paid one and one-half their regular rate of pay for all

overtime hours. Specifically, as to the former claim, Plaintiff alleged that she was not paid for her intraday travel time in violation of the Fair Labor Standards Act and Ohio law. *See* 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.") As to the latter claim, Plaintiff alleged that Defendant unlawfully reduced her regular hourly rate of pay when she worked over 40 hours in a workweek. *See* 29 C.F.R. § 778.500(b) ("the hourly rate paid for the identical work during the hours in excess of the applicable maximum hours standard cannot be lower than the rate paid for the nonovertime hours nor can the hourly rate vary from week to week inversely with the length of the workweek.")

Defendants denied Plaintiff's claims, as set forth in their Answer filed on January 18, 2023 (ECF #9).

### B. Exchange of Records and Mediation

At the March 13, 2023 Case Management Conference, the parties discussed referral to mediation after exchange of sufficient discovery necessary for the parties to evaluate their respective settlement positions. The Court referred this case to mediation, which was ordered for May 16, 2023.

Plaintiff's Counsel had conducted extensive investigation before filing this case. In order to conduct further due diligence as to Defendants' potential liability and exposure, Plaintiff requested, and Defendants produced: (1) Hilda Ramirez's complete time and pay records for the entire lookback period at hand in this case, (2) company policies and procedures relevant to the pay practices at issue, (3) a sampling of time and pay records for 15 other home health aides working for Hearty Hearts Home Health during the time period relevant to this case, and (4) a

roster of all home health aides working over the time period at issue in this case – a totaled 352 current and former employees.

Those records first enabled the parties to place a precise estimated value on Hilda Ramirez's claim. The records also enabled the parties to reasonably estimate damages to the other home health aides working for Defendants in the 3 years preceding the filing of this lawsuit. Shortly after being served with Plaintiff's Complaint, Defendants internally audited Hearty Hearts Home Health's pay practice and voluntarily issued $59,983.64 in "additional payments" to 54 current and former home health aides in connection with Plaintiff's regular rate allegations. These 54 aides each received an additional payment commensurate with Defendants' calculation of the full amount of overtime pay that would be due to them if Plaintiff's "regular rate" claim prevailed in its entirety. The roster produced by Defendants in discovery identified the amounts paid to each of the 54 aides. Analysis of those amounts and comparison to the exemplar time and pay data produced in discovery enabled Plaintiff to extrapolate Defendants' likely exposure to the 352-person putative collective.

### C. Mediation and Negotiation

On May 16, 2023, the parties proceeded to mediation before Magistrate Judge Greenberg. After a full day of mediation, the parties agreed upon a settlement in the amount of $165,000.00. The proposed settlement resulted from hard bargaining as to the settlement's amount and mutual consideration of its structure. The parties believe the settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation, including Defendants' wherewithal to fund extended litigation and a judgment exceeding the proposed settlement amount. For the Plaintiff and the Opt-Ins, the proposed settlement will eliminate the risk and delay of litigation and

make substantial payments available to all persons believed to have been affected by the alleged pay practices.

## II. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

The proposed settlement will resolve the FLSA claims of Plaintiff Ramirez and similarly-situated employees who consent to become parties to the case and settlement pursuant to 29 U.S.C. § 216(b).

### B. Certification of the Collective

FLSA plaintiffs and opt-ins must be "similarly situated to proceed collectively under 29 U.S.C. 216(b). In assessing whether a putative collective action group is similarly situated, the Court must analyze "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir.2017). Employees are similarly situated to each other when their claims "are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 398.

All Potential Opt-Ins are similarly situated to Plaintiff Hilda Ramirez. Their factual and employment settings are identical with respect to the issues in this case. Ms. Ramirez and the Potential Opt-Ins were all non-exempt hourly home health aides who worked for Defendants between August 31, 2019 and March 31, 2023. *Declaration of Plaintiff's Counsel*, at Exhibit 3, ¶ 6. As confirmed by the timekeeping and pay records exchanged in this case, Hearty Hearts Home Health engaged in uniform pay practices with respect to all Potential Opt-Ins. *Id*.

The potential defenses to each of Plaintiff's claims are also the same for the whole collective group. Defendants claimed that their home health aides rarely engaged in compensable intraday travel. *Id.* at ¶ 7. Defendants further claimed that they had lawful justifications for reducing aides' hourly rate. *Id.* For instance, Hearty Hearts Home Health's written employment policies called for reduction in pay when certain policies and procedures were violated – a practice arguably permitted by the FLSA and Ohio law. *Id.*

Finally, as all parties jointly request certification, the fairness and procedural impact factor weighs in favor of allowing the case to proceed collectively. The proposed certification and settlement offer an excellent recovery to all affected aides, and curtail this litigation and concomitant fees for Defendants.

### C. The Proposed Settlement Payments and Distributions

<u>Total Settlement Amount</u>. Defendants have agreed to pay the total Settlement Amount of $165,000, as set forth in the Settlement Agreement in three equal installments of $55,000, each 18 months apart – on October 1, 2023, April 1, 2025, and October 1, 2026. The Settlement Amount, after deduction of a Service Award, Attorneys' Fees, and Reimbursed Litigation Expenses (the "Net Proceeds"), will be made available to the Plaintiff and the Opt-Ins in individual settlement payments as follows.

<u>Method of Allocation</u>. The proposed method of allocating the Collective payments is reasonable and fair to all. The net proceeds will be allocated to the Plaintiff and Opt-Ins in proportion to their total hours worked between August 31, 2019 and March 31, 2023 based on Defendants' time and pay records. Payouts to those Opt-Ins who already received a payment from Defendants (i.e., part of the $59,983.64 previously distributed) will have their payments offset by 75%. Since the employees compensated to date are those who worked the most hours for

6

4881-3140-4138, v.1

Defendants, even if three-quarters of the potential Opt-Ins participate in this settlement – an opt-in rate far higher than the usual 20-40% - each Opt-In would receive over 100% of their estimated unpaid overtime wages.

Service Award.  The proposed settlement provides for a service award of $3,500 to Plaintiff Hilda Ramirez in recognition of her assistance to Plaintiff's Counsel and her vital contribution to achieving the settlement on behalf of all Opt-Ins.

Attorneys' Fees and Cost Reimbursements.  The proposed settlement includes a payment of $55,000.00 to Plaintiff's counsel for attorneys' fees and reimbursement of litigation costs.

## III. THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b).  The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate."  *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012).  *Accord, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

The proposed settlement satisfies all of these prerequisites and standards for purposes of this settlement, as shown below.

### A. The Settlement Is Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of settlement proceeds is equitable."  *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL

2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *12.

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate":

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

Id. at at 276-77. (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, No. 06-299, 2008 U.S. Dist. LEXIS 90070, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). That test is also used in the Sixth Circuit in weighing the approval of proposed FLSA collective action settlements. *Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16, 2022 U.S. Dist. LEXIS 81666, at *12 (W.D.Ky. May 4, 2022) ("Because FLSA settlements must likewise be 'fair and reasonable,' courts in the Sixth Circuit apply this seven-factor test when reviewing such settlements as well.") (citing *Burnham v. Papa John's Paducah, LLC*, No. 5:18-cv-112, 2020 U.S. Dist. LEXIS 75220, at *2 (W.D. Ky. Apr. 29, 2020)).

All factors weigh in favor of approval. With respect to the first factor, the parties are genuine adversaries and negotiated this settlement at arms-length with the assistance of a mediation. With regard to the second and fourth factors, litigating FLSA claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Opt-Ins' damages. Moreover, if this litigation carried through its probable duration, the costs of defense would threaten Defendants' ability to finance a resolution. With respect to the third factor, the parties engaged in adequate discovery to fully flesh out the strengths and weaknesses of their respective positions. With respect to the fifth factor, the proposed Settlement will eliminate the risk and delay of litigation and make settlement payments available to all. With respect to the sixth factor, as this settlement is opt-in only, there are no absent class members whose rights will be affected. Finally, with respect to the last factor, this settlement terminates this litigation and promotes the FLSA's remedial purposes. Thus, the settlement is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *12. In the present case, the proposed settlement will make individual settlement payments available to the Plaintiff and Opt-Ins according to a fair and reasonable method of allocation. The Opt-Ins will receive an excellent recovery, particularly when accounting for the collectability of the Defendants. The proceeds will

be allocated in accordance with actual hours worked, and thus will track the alleged damages sustained by Opt-Ins. Those Opt-Ins who already received payments from Defendants will have their distributions proportionally reduced.

### C. The Proposed Service Award is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09-cv-1608, 2010 WL 2490989, at \*7). *Accord In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to Plaintiff Ramirez is amply justified by her assistance to Plaintiff's Counsel and her vital contribution to achieving the settlement on behalf of all Opt-Ins.

### D. The Attorneys' Fees Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). *See Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994); *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

In the present case, the proposed payment of $55,000.00 for attorneys' fees and reimbursed litigation costs are reasonable, and the one-third are well in accord with fees routinely awarded in the Sixth Circuit. *See Dillworth v. Case Farms Processing, Inc.*, No.: 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See also Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("[o]ne-third of the common fund is a reasonable attorneys' fee award "and has been approved in similar FLSA collective actions in this judicial district.") (citing *Rotuna v. W. Customer Mgmt. Grp., LLC,* No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, at *7 (N.D. Ohio June 15, 2010)).

### E. The Proposed Notice Should Be Approved

The proposed Notice to Potential Opt-Ins ("Notice") attached at Exhibit 3 should be approved. The Notice describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release.

The proposed Notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Using regular mail and electronic mail to disperse notice will increase the likelihood that putative collective members will receive notice, while reducing the total cost.

This method has been approved by Southern District of Ohio courts on numerous occasions. *See, e.g. Hawkins v. Extended Life Home Care, Ltd.*, No. 2:18-cv-344, 2019 U.S. Dist. LEXIS 30887, *9 (S.D. Ohio 2019) (noting that the trend has been to permit sending notice by

11

regular mail and email to ensure potential plaintiffs receive notice of the pending FLSA action); *Slaughter v. Lincoln Elec. Co.,* No. 1:18-cv-2705, 2019 U.S. Dist. LEXIS 173762, *27 (N.D. Ohio Oct. 7, 2019) ("the Notice shall be sent to the potential opt-ins within thirty (30) days using the home and email addresses provided by the Defendant."); *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-cv-1225, 2019 U.S. Dist. LEXIS 164312, *32 (S.D. Ohio Sept. 25, 2019) ("The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so. Accordingly, the Court permits the Notice and Consent form to be sent via U.S. mail and e-mail to all putative class members.").

As set forth in the Notice, the parties request opt-in period of forty-five days, which will adequately balance the interests of permitting potential Opt-Ins sufficient time to explore participation and permit this matter to be concluded.

### IV. <u>CONCLUSION</u>

For the reasons addressed above, the parties respectfully request that the Court enter the Proposed Approval Order, attached as Exhibit 4.

        Respectfully submitted,

        */s/ Scott D. Perlmuter*
        SCOTT D. PERLMUTER (0082856)
        **TITTLE & PERLMUTER**
        4106 Bridge Avenue
        Cleveland, OH 44113
        Phone:216-285-9991
        Fax: 888-604-9299
        Email: scott@tittlelawfirm.com
        *Attorney for Plaintiff*

        *s/ Todd F. Palmer*
        TODD F. PALMER (0047582)
        ABBEY KINSON BROWN (0092629)
        CALFEE, HALTER & GRISWOLD LLP
        The Calfee Building

1405 East Sixth Street
Cleveland, Ohio 44114
Phone: 216-622-8200
Fax: 216-241-0816
tpalmer@calfee.com
abrown@calfee.com
*Attorneys for Defendants Hearty Hearts Home Health, LLC and Eminelly Garced*

PROOF OF SERVICE

    I certify that on this June 17, 2023 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                  *s/ Scott D. Perlmuter*
                  Scott D. Perlmuter (0082856)